## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WANDA RIOS,                                      *
                                                *
              Plaintiff,            *
                                                *
          vs.                      *          Civil Action No.  ADC-16-0715
                                                *
CAROLYN W. COLVIN,                              *
Acting Commissioner,                            *
Social Security Administration,                 *
                                                *
            Defendant.            *
                                                *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

On March 11, 2016, Wanda Rios ("Plaintiff") petitioned this court to review the Social Security Administration's ("SSA") final decision to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and each parties cross-motions for summary judgment (ECF Nos. 16 and 17), the Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 16) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED, and the decision of the Social Security Administration is AFFIRMED.

### PROCEDURAL HISTORY

On December 1, 2013, Plaintiff filed a Title XVI application for supplemental security income alleging disability beginning on December 10, 2010. Plaintiff additionally filed a Title II application for a period of disability and disability insurance benefits. Her claim was denied initially and upon reconsideration on March 14, 2014 and July 17, 2014, respectively. Subsequently, on July 31, 2014, Plaintiff filed a written request for a hearing and, on May 13,

2015, a hearing was held before an Administrative Law Judge ("ALJ"). On December 30, 2015, the ALJ rendered a decision denying Plaintiff's claims for SSI. *See* ECF No. 13. Thereafter, on February 5, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Thus, the decision rendered by the ALJ became the final decision of the Commissioner. *See* C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On March 11, 2016, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's final decision.[1] On August 15, 2016, Plaintiff filed a Motion for Summary Judgment. On October 5, 2016, Defendant filed a Motion for Summary Judgment. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement and Defendant's Motion for Summary Judgment.

## STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). However, the Court does not conduct a de novo review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *see also Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a de novo review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence."). Therefore, the issue before the

---

[1] On November 29, 2016, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.").

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d at 653 (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB, a claimant must establish that he is under disability within the meaning of the Social Security Act. The term "disability," for purposes of the Social Security Act, is defined as the "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be

determined to be under disability where "his physical or mental impairment or impairments are

of such a severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Social

Security Act, the ALJ, acting on behalf of the Commissioner, follows the five-step evaluation

process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see*

*Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).The evaluation process is sequential, meaning that,

"[i]f at any step a finding of disability or non-disability can be made, the [Commissioner] will

not review the claim further." *Barnhart v. Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is

engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the

claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically

determinable physical or mental impairment [or combination of impairments] that meets the

duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does

not have a severe impairment or combination of impairments meeting the durational requirement

of 12 months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c),

416.920(a)(4)(ii), 416.920(c), 416.909.

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Social Security Ruling (SSR) 96–8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir.1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective

medical evidence. SSR 96–7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. (Id.).

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume her past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. At steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012); *See also Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.* In addition, before the agency may conclude that a claimant can perform alternative skilled or semi-skilled work, it must show that the claimant possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary to perform those positions. *McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983).

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found, at step one, that Plaintiff did not engage in substantial gainful activity since the amended alleged onset date of December 5, 2013. ECF No. 13 at 20. At step two, the ALJ found that Plaintiff had the following severe impairments: affective disorder, anxiety disorder, degenerative joint disease of the right shoulder, and degenerative changes of the lumbar spine. *Id.* at 21. The ALJ further found that the aforementioned impairments were expected to last a period of twelve months. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. *Id.*

At step four, the ALJ determined that Plaintiff had the residual functional capacity to "perform sedentary work as defined in 20 C.F.R. 416.967(a) except she can have only occasional contact with the public and co-workers and frequently use her right arm and hand." *Id.* at 23. In addition, after considering the evidence on record, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. *Id.* at 27. However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. *Id.* Based on the resulting RFC, the ALJ then determined that Plaintiff was capable of performing past relevant work as a secretary and receptionist.[2]

Finally, at step five, the ALJ determined that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant has also acquired

---

[2] ECF No. 13 at 33 ("[Plaintiff] is capable of performing past relevant work as a secretary and receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).").

work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." *Id.* at 33. Based on the testimony of the vocational expert (VE), the ALJ determined that Plaintiff's skills would transfer to secretary positions in other industries, such as school secretary (15,000 jobs locally, 500,000 jobs nationally) and data entry clerk (1,000 positions locally, 50,000 positions nationally). Thus, the ALJ concluded that, "a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 201.15 and 201.07." *Id.* at 34.

## DISCUSSION

Plaintiff raises three allegations of error on appeal: (1) that the ALJ erred in evaluating Plaintiff's RFC; (2) that the ALJ erred in determining Plaintiff could perform past relevant work; and (3) that the ALJ erred in concluding that Plaintiff's jobs skills were transferable. Each of Plaintiff's arguments lack merit and are addressed below.

### A. The ALJ properly evaluated Plaintiff's RFC pursuant to SSR 96-8p.

At step four of the sequential evaluation, the ALJ determined that Plaintiff could "perform sedentary work as defined in 20 C.F.R. § 416.967(a) except she can have only occasional contact with the public and co-workers and frequently use her right arm and hand." ECF No. 13 at 23. Plaintiff advances several arguments to support her contention that the ALJ's RFC finding is not supported by the record. The Commissioner, on the other hand contends that substantial evidence supports ALJ's RFC finding. The Court agrees.

RFC is a measure of a person's ability to perform physical and mental activities in a work setting on a "regular and continuing basis" in spite of his or her impairments. 20 C.F.R. § 404.1545(a); *Hines v. Barnhart*, 453 F.3d 559,562 (4th Cir. 2006). The assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546;

SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). In assessing a claimant's RFC, the

ALJ must consider: "all relevant evidence of [the] claimant's impairments and any related

symptoms (e.g., pain)." *Id.; see also* 20 C.F.R. § 404.1529(a). If more than one impairment is

present, the ALJ must consider the combined effect of all impairments without regard to whether

any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523;

*see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[ ] of various

impairments upon a disability benefit claimant, the [Commissioner] must consider the combined

effect of a claimant's impairments and not fragmentize them.").

Social Security Ruling 96–8p provides the proper framework for evaluating a claimant's

RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts (e.g., laboratory
> findings) and nonmedical evidence (e.g., daily activities, observations). In
> assessing RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and continuing
> basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and
> describe the maximum amount of each work-related activity the individual can
> perform based on the evidence available in the case record. The adjudicator must
> also explain how any material inconsistencies or ambiguities in the evidence in
> the case record were considered and resolved.

SSR 96–8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). In addition, for cases in which

symptoms, such as pain, are alleged, the Ruling requires that the RFC:

> [c]ontain a thorough discussion and analysis of the objective medical and other
> evidence, including the individual's complaints of pain and other symptoms and
> the adjudicator's personal observations, if appropriate; [i]nclude a resolution of
> any inconsistencies in the evidence as a whole; and [s]et forth a logical
> explanation of the effects of the symptoms, including pain, on the individual's
> ability to work.

> The RFC assessment must include a discussion of why reported symptom-related
> functional limitations and restrictions can or cannot reasonably be accepted as
> consistent with the medical and other evidence.

*Id.* Furthermore, "The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quotation omitted). "Only after that may [RFC] be expressed in terms of the exertional levels of work [:] sedentary, light, medium, heavy, and very heavy." *Id.* (quoting SSR 96-8p).

Plaintiff contends that additional limitations with regard to her mental and social functioning were required based on the medical evidence in the record. Plaintiff points primarily to the examination reports of her consultative examiner Dr. Taylor-Innis indicating that Plaintiff appeared sad and anxious, was limited in her ability to interact socially, and also suffered from bipolar and panic disorder. Dr. Taylor-Innis also assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 50.[3] Plaintiff additionally points to the state agency examiners reports that she was moderately limited with social interaction and the opinion of her treating psychiatrist stating that Plaintiff would have substantial loss of ability to respond appropriately to supervisors, co-workers, and usual work situations. Plaintiff further notes that the record demonstrates that she suffered from anxiety, sadness, isolation, racing thoughts, panic attacks, auditory and visual hallucinations, was nervous around crowds, became irritable when dealing with other people, and experienced various psychological impairments including bipolar disorder, panic disorder, agoraphobia, and depression.

___

[3] Pursuant to the Global Assessment of Functioning (GAF) scale, a GAF score of 50 represents serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social occupational, or school functioning (e.g. no friends, unable to keep a job).

Plaintiff's argument ignores the fact that the ALJ's RFC formulation provided significant detail as to why the above evidence was rejected. *See* ECF No. 13 at 29-32. With respect to Plaintiff's alleged mental symptoms, the ALJ noted:

> [T]he record shows that on February 25, 2014, she denied delusions, previous suicide attempts, and homicidal ideations, intent, or plan. Although she testified to suicidal thoughts, she repeatedly denied suicidal ideation, intent, or plan. Although she testified that she has panic attacks 2-3 times a week, in May 2014 she stated that she had not had any panic attacks in two months. On examination in February 2015, she was noted to have a normal affect.

Similarly, with respect to Plaintiff's social functioning, the ALJ stated:

> Although claimant testified that she believes people are out to hurt her, the record shows that in early 2014 she stated that she traveled using public transportation and goes to church on a regular basis. On examination on February 25, 2014, her eye contact was noted to be appropriate, her speech was coherent, and she was easy to engage and was cooperative with the interviewer. At that time, she stated that her brother visits her daily, she has no problems socializing with others, and had no problems getting along with co-workers and supervisors. On examination in May 2014, she was noted to be cooperative, with normal speech. She has a best friend, Mr. Daryl Jones, with whom she communicated frequently.

Plaintiff next argues that the ALJ's RFC determination should have included a limitation to address her difficulties with sitting, standing, carrying, and lifting. With regard to these physical limitations, Plaintiff cites to an opinion from her treating nurse practitioner stating that Plaintiff could not sit for six hours, stand for two hours, or lift and carry objects weighing over ten pounds as well as X-rays confirming that Plaintiff had degenerative issues in both her right shoulder and spine.

Again, Plaintiff's argument ignores the ALJ's detailed findings as to the above referenced evidence. Regarding Plaintiff's physical functioning particularly with regard to her shoulder and spine symptoms, the ALJ's step four discussion noted:

> Although she testified she is in constant pain with her back and shoulder, the record shows that on examination since the amended alleged onset date, she was repeatedly noted to be healthy appearing and did not complain of shoulder pain.

On January 26, 2015, she denied shoulder, back, and abdominal pain, nausea, loss of appetite, and weight loss.

[...]

There are no complaints of shoulder pain in the record until October 2014.

[...]

X-rays in early October 2014 showed only moderate narrowing of the C5-7 disc spaces with only moderate bony spurring, and only mild degenerative changes in the region of the greater tuberosity and AC joint of the right shoulder. On examination, she was repeatedly noted to have normal range of motin of the neck. X-ray of the right shoulder in May 2015 was negative.

With respect to Plaintiff's ability to perform work related tasks specifically, the ALJ cited

to the following medical evidence:

[T]he interviewer noted that she had no apparent difficulty sitting, standing, walking, using her hands, or writing.

[...]

W. Hakkarinen, M.D., reviewed the record for the state agency and opined on March 14, 2014, that the claimant had no severe physical medically determinable impairments, explaining that her physical conditions cause no more than minimal impact on the ability to perform work-related activities.

*Id.* at 29.

Thus, the ALJ's decision included a lengthy discussion of the evidence on record detailing the reasons why the objective medical evidence did not support the extent of Plaintiff's alleged mental symptoms and social functioning limitations, repeatedly finding that "the record [was] inconsistent with a disabling level of impairments." ECF No. 13 at 28-32. With respect to the mental symptoms alleged by Plaintiff, the ALJ explained that the allegations were inconsistent with Plaintiff's activities of daily living, Plaintiff's own previous statements to various examiners, and the objective medical evidence of relatively normal exam and diagnostic findings. *Id.* Similarly, the ALJ provided sufficient reasons why the evidence did not support

Plaintiff's assertion that her physical symptoms were disabling. *Id*. Thus the ALJ provided an adequate explanation of why, despite Plaintiff's impairments and alleged symptoms, no additional limitations were placed in Plaintiff's RFC as those limitations were not supported by substantial evidence.

Moreover, the ALJ explained that the mental and physical functional limitations recommended by Plaintiff's treating psychiatrist and treating nurse practitioner were inconsistent with the objective evidence referenced above and thus, their respective opinions were given little weight in the ALJ's assessment. *Id*. at 31-32. By contrast, the ALJ gave significant weight to the opinions of state agency examiners Dr. Corine Samwel, Ph.D, and Dr. Maurice Prout, Ph.D and the RFC determination was consistent with those opinions. *Id*. at 30-31.

Plaintiff further contends that the ALJ's RFC assessment was deficient because the ALJ "failed to make a function-by-function assessment of [Plaintiff's] mental and physical RFC" as required by Security Ruling 96-8p. ECF No. 16-1 at 27. While SSR 96-8p requires an ALJ to consider the evidence presented on a function-by-function basis, it "does not require [her] to produce such a detailed statement in writing." *Davis v. Astrue*, Civil No. JKS-09–2545, 2010 WL 5237850 (D. Md. Dec.16, 2010). Rather, an RFC assessment is sufficient if it includes "a narrative discussion of [the] claimant's symptoms and medical source opinions." *Thomas v. Comm' r, Social Sec.*, Civil No. SAG–10–1828, 2011 WL 6130605 at *4 (D. Md. Dec.7, 2011); *See also Coles v. Astrue*, Civil No. JKS-08–0321, 2009 WL 3380334 (D. Md. Oct.16 2009) ("Once all of the relevant evidence has been considered, then the ALJ may express the RFC in terms of the exertional levels of work.") (citing SSR 96–8p at *3.).

The Court finds that the ALJ met this standard by providing a full and detailed narrative of her consideration of the evidence on file, specifically addressing all of the evidence presented

by Plaintiff with regard to her physical, mental, and social limitations, and explaining why that evidence was not compelling based on the objective evidence and medical opinions on record. ECF No. 13 at 23-33. This constitutes a sufficient function-by-function assessment under 96-8p. *Vandervort v. Astrue*, Civil No. TMD-10–2671, 2013 WL 508987, at *2 (D. Md. Feb. 11, 2013) ("While the precise medical evidence relied on for every specific limitation need not be discussed directly in the actual RFC finding, the Court must not be required to speculate as to the bases for the findings."). In the present case, the basis for the ALJ's RFC determination is clear. Consequently, Plaintiff's argument fails.

**B.  The ALJ Properly Determined that Plaintiff Could Perform Past–Relevant Work.**

At step four of the sequential evaluation, the ALJ concluded that Plaintiff was capable of performing past relevant work as a secretary and receptionist. Plaintiff contends that the ALJ's step four conclusion was erroneous because the ALJ failed to measure the demands of Plaintiff's past relevant work as an auto body shop secretary/receptionist against her determined RFC. The Court, however, finds that the ALJ's analysis was adequate and complied with all relevant rulings and regulations.

At step four, the ALJ considers whether the claimant is capable of performing past relevant work based on his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). In making this decision the ALJ is required to follow the three-step analysis outlined in Social Security Ruling 82-62. *See* SSR 82–62, 1982 WL 31386, at *4 (1982). At step one, the ALJ must make a finding of fact as to the claimant's residual functional capacity. *Id*. At step two, the ALJ must make a finding of fact as to the physical and mental demands of any past job or occupation held by the claimant. *Id*. At step three, the ALJ must make a finding of fact that the individual's residual functional capacity would permit a return to his or her past job or occupation. *Id*. If a

claimant can perform her prior work as generally performed in the national economy or as actually performed by her, then the ALJ will conclude that she is not disabled. *See id.*; *see also* 20 C.F.R. §§ 404.1520(f), 416.920(f); SSR 82–61, 1982 WL 31387, at *2 (1982).

The ALJ's opinion contains findings on each of the mandated steps contained in SSR 82-62. First, the ALJ found that Plaintiff had the RFC to "perform sedentary work as defined in 20 C.F.R. 416.967(a) except she can have only occasional contact with the public and co-workers and frequently use her right arm and hand." ECF No. 13 at 23. Second, the ALJ found—based on the testimony of the Vocational Expert ("VE"), Plaintiff's own testimony, and each occupation's Dictionary of Occupational Titles ("DOT") description and requirements—that Plaintiff's past relevant work as a secretary was a "semi-skilled, sedentary position with a specific vocational preparation time code ("SVP") of 6 and that Plaintiff's past relevant work as a receptionist was a "sedentary position with an SVP of 3." *Id.* at 33; *see also* U.S. Dep't of Labor, 201.362-030 Secretary, DOT, 1991 WL 671672 (4th ed. 1991); U.S. Dep't of Labor, 237.367-010 Appointment Clerk, DOT, 1991 WL 672185 (4th ed.1991). Finally, the ALJ found, consistent with the VE's testimony, that Plaintiff's RFC enabled her to perform her prior work "as actually and generally performed." *Id.* Thus, the ALJ's findings satisfied the requirements of Social Security Ruling 82-62. *See* SSR 82–62, 1982 WL 31386, at *4; *see also Crawley v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG–11–2427, 2013 WL 93202, at *3 (D. Md. Jan. 7, 2013); *Taylor v. Astrue*, Civil No. BPG–11–0032, 2012 WL 294532, at *9 (D. Md. Jan. 31, 2012); *Brown v. Astrue*, Civil No. TMD-09–1358, 2011 WL 3047635 at *4 (D. Md. July 22, 2011).

Next Plaintiff argues that the ALJ's step four findings were not supported by the evidence. In determining whether a claimant retains the RFC to meet the mental and physical demands of any past relevant work, the regulations permit the ALJ to "use the services of

vocational experts or vocational specialists, or other resources, such as the [DOT] and its companion volumes and supplements, published by the Department of Labor" when making this determination. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). Here, the ALJ's step four finding was supported by Plaintiff's own testimony, the VE's testimony, and the DOT definitions with regard to Plaintiff's past relevant work. Thus, the ALJ's step four determination was properly supported by substantial evidence from the record.

Plaintiff additionally contends that "[b]y going to step 5 of the sequential evaluation, the ALJ conceded that [Plaintiff] was unable to perform her past relevant work at step 4[.]" ECF No. 16-1 at 14. Plaintiff's argument lacks merit. *See Lindsey v. Soc. Sec. Admin. Com'r,* Civil No. JAW-10-0038, 2011 WL 86567, at *2 (D. Me. Jan. 10, 2011) (rejecting argument that an ALJ may not offer an alternative step five finding when he or she has made a finding of "not disabled" at step 4). Furthermore, this Court has previously recognized the propriety of alternative step five findings. *See Queen v. Astrue*, Civil No. TMD-10-3364, 2012 WL 1016822, at *3 (D. Md. Mar. 23, 2012) (holding that the ALJ's error at step four was harmless error where the Court upheld the ALJ's alternative step five finding); *Timmons v. Colvin*, Civil No. ADC-16-0271, 2016 WL 7408837, at *6 (D. Md. Dec. 21, 2016) (same); *see also Malachi v. Colvin*, Civil No. 214-CV-03334-TMC-MGB, 2016 WL 551828, at *5 (D.S.C. Jan. 25, 2016). Therefore, Plaintiff's argument fails as a matter of law.

## C. The ALJ Properly Determined That Plaintiff's Job Skills Were Transferable

Finally, Plaintiff disputes the ALJ's step five finding contending that, given the different duties and skills contained in the Dictionary of Occupational Titles ("DOT"), Plaintiff, aged 56 at the time of the hearing, could not have adjusted vocationally to the occupations of school secretary and data entry clerk. At Plaintiff's hearing, the vocational expert ("VE") testified that

Plaintiff's past relevant work as a secretary was sedentary, skilled work with a specific vocational preparation (SVP) code of 6 which required the transferable skills of use of computer equipment, keyboarding, record keeping, and data input. ECF No. 13 at 69-70. Based on that testimony, the ALJ determined at step five of the sequential evaluation that Plaintiff had acquired work skills from her past relevant work that were transferable to other occupations that existed in significant numbers in the national economy, including jobs as a school secretary and data entry clerk. ECF No. 13 at 34.

In support of her contention that the ALJ's step five finding was improper, Plaintiff posits that, in order to find transferability of skills to skilled sedentary work [such as the DOT school secretary and data entry clerk] for individuals who are 55 and older (advanced age), there must be "very little, if any, vocational adjustment in terms of tools, work processes, work setting, or the industry." ECF No. 16-1 at 16 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.00(f)).) Thus, Plaintiff argues that the ALJ failed to meet the burden of showing that there were jobs available to which her skills could directly transfer. For the following reasons, the Court finds Plaintiff's argument unpersuasive.

The regulations provide that skills are transferable "when the skilled or semi-skilled work activities [a claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1) (2016). Transferability means "applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." SSR 82-41(2)(b), 1982 WL 31389 at *2 (S.S.A. 1982). With respect to Plaintiff's particular age category, a person of advanced age, the regulations specifically require the following:

> If you are of advanced age (age 55 or older) ... and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that

you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

C.F.R. § 404.1568(d)(4); *see also* SSR 82-41(4)(c) (providing that in order "[t]o find that an individual who is age 55 or over and is limited to sedentary work exertion has skills transferable to sedentary occupations, there must be very little, if any vocational adjustment required in terms of tools, work processes, work settings or the industry.") Some job skills are unique to a specific work process in a particular work setting. However, where job skills have universal applicability across industry lines (such as clerical, professional, administrative, or managerial types of jobs), transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment if jobs with similar skills can be identified as being within an individual's determined RFC. SSR 82-41(4)(c).

The crux of Plaintiff's argument is that the two jobs identified by the VE at the hearing, school secretary and data entry clerk, were not in the industry where her transferable skills originated. Plaintiff's argument is flawed, however, because Plaintiff misinterprets section 404.1568(d)(4). This section only requires very little adjustment in tools, work processes, work settings *or* industry. 20 C.F.R. § 404.1568(d)(4) (emphasis added ). Plaintiff bases her argument solely on the change of industry while ignoring the tools, work processes, and work settings that are similarly employed. The test, instead, is whether the claimant can perform the new jobs "at a high degree of proficiency with a minimal amount of job orientation." SSR 82–41.

Here, the ALJ's determination that Plaintiff's work skills were transferable was based primarily on the VE's testimony that Plaintiff "would do the same kind of keyboarding and recordkeeping" as a school secretary. *Id.* Likewise, the VE testified that the skills of data entry and keyboarding also applied to the job of data entry clerk. Further, the VE explicitly considered

18

the issue of differing industries, but noted that the work processes and skills required for the alternative positions remained the same. *See* ECF No. 13 at 70 ("Albeit, it's a different industry, the skills are the same. The work process is the same, the industry is different."). Additionally, the ALJ conferred that the VE testimony was consistent with the relevant job description information contained in the *Dictionary of Occupational Titles* (DOT). Therefore, despite the fact that the two jobs identified by the VE were in different industries, there was substantial evidence that Plaintiff's skills would transfer to those occupations based on the close similarity of the work processes involved in carrying out those jobs. Thus, the ALJ did not err in finding that Plaintiff had transferrable work skills at step five of the sequential evaluation.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Social Security Act. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 16) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED, and the decision of the Social Security Administration is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 23 January 2017

A. David Copperthite
United States Magistrate Judge